**Certiorari Granted, March 1, 2013, No. 33,997**
**Certiorari Granted, March 1, 2013, No. 33,999**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-035**

**Filing Date: December 13, 2012**

**Docket No. 30,827**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**ANTONIO T.,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sandra Price, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Albuquerque, NM

for Appellee

Albright Law & Consulting
Jennifer R. Albright
Albuquerque, NM

for Appellant

Jennifer Street
Albuquerque, NM

Jones, Snead, Wertheim & Wentworth P.A.
Jerry Todd Wertheim
Santa Fe, NM

1

for *Amicus Curiae* New Mexico Criminal Defense Lawyers Association

Cuddy & McCarthy LLP
John F. Kennedy
Santa Fe. NM

for *Amicus Curiae* New Mexico School Boards Association and New Mexico Coalition of School Administrators

**OPINION**

**KENNEDY, Judge.**

**{1}**     A vice principal interrogated a high school student suspected of being intoxicated. The interrogation was conducted in her office in the presence of a police officer. The officer thereafter arrested the student, and the student's statements to the vice principal were used against him in his juvenile case. We evaluate whether the student was subject to questioning in violation of his rights against self-incrimination under NMSA 1978, Section 32A-2-14 (2009) and the Fifth Amendment to the United States Constitution. We consider whether the student was subject to an investigatory detention and whether *Miranda* protections are extended under Section 32A-2-14 to include interrogations by school officials in the presence of a passive officer. We conclude that, although the student experienced an investigatory detention, the vice principal was not acting on behalf of law enforcement, and the unique concerns of a school investigation do not require a student to receive warnings prior to questioning by a school official in these circumstances. We affirm the district court.

**I.     BACKGROUND**

**{2}**     On April 14, 2010, at Kirtland Central High School, two teachers escorted a student, Antonio T., to the school's administrative office based on the suspicion that he was intoxicated. Antonio was taken to the office of Vice Principal Vanessa Sarna. Sarna stated that she immediately noticed that Antonio's speech was slurred. Shortly after Antonio arrived in the office, Sarna called in Deputy Emerson Charley, a police officer who served as the school's resource officer. The deputy was dressed in full police uniform and equipped with all of the standard instruments of lethal and non-lethal force. Sarna stated that she had called in the deputy to administer a portable breath test (PBT), as well as to protect her in case Antonio became violent. The deputy prepared the PBT while Sarna questioned Antonio. The deputy testified that, before administering the PBT, he heard Sarna ask Antonio if he had consumed any alcohol, what kind of alcohol, and how much he had consumed.

**{3}**     During the course of Sarna's questioning, Antonio admitted to drinking two shots of peppermint schnapps before disposing of the bottle in a restroom trash can. Deputy Charley then administered the PBT, which showed that Antonio's blood alcohol concentration was

2

.11%. While Antonio took the PBT, Sarna searched his bag within a few feet from the deputy and Antonio. She discovered a folding pocket knife. Sarna confiscated the knife and gave it to the deputy. Sarna then directed the deputy to go search the bathroom for the bottle that Antonio disposed of in the trash can. The deputy left Sarna's office to search for the bottle, but was unable to locate it.

**{4}** Sarna testified that the purpose of her investigation was to ensure the safety of Antonio and other students. She also stated that the PBT was administered for safety reasons and that Deputy Charley searched the bathroom to ensure that intoxicants had not been left out for other students to find and possibly ingest.

**{5}** After searching the bathroom, Deputy Charley returned to the administrative office, read Antonio his *Miranda* rights, and proceeded to question him. Antonio answered the deputy's questions about the knife, but asserted his Fifth Amendment right against self-incrimination when he was questioned about the alcohol. The deputy arrested Antonio and charged him as a minor in possession of alcohol and for carrying a deadly weapon on school premises. The knife is not an issue in this case. The deputy testified that he had actively listened to Sarna's questions and used Antonio's admission to consuming alcohol in filling out his police report.

**{6}** Antonio moved to suppress his admission to consuming alcohol, and the district court held an evidentiary hearing in the matter. Antonio alleges that at the hearing, the State failed to show that the admission was made after a knowing, intelligent, and voluntary waiver of his right to remain silent pursuant to Section 32A-2-14(C) and (D). Deputy Charley and Sarna maintained that their investigations were distinct and unrelated. Antonio's confession was admitted as evidence against him. The district court orally denied the motion to suppress and Antonio appealed the admission of his confession.

## II.    DISCUSSION

**{7}** Antonio argues that his confession should have been suppressed under New Mexico's broad extension of *Miranda* protection for juveniles under Section 32A-2-14. The State argues that Antonio was not entitled to a reading of his *Miranda* rights because he was questioned by Sarna, a school administrator, not law enforcement, and that Sarna's investigation was school-related and not on behalf of the police.

### A.    *Miranda* Warnings in Custodial Interrogations

**{8}** The United States Supreme Court recognized that, due to compelling pressures in custodial interrogations, suspects are required to be advised of their Fifth Amendment rights before questioning. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). A determination of whether a person is subject to custodial interrogation and entitled to the constitutional protections of *Miranda* is a mixed question of law and fact. *State v. Javier M.*, 2001-NMSC-030, ¶ 17, 131 N.M. 1, 33 P.3d 1 (internal quotation marks and citation omitted). "[W]e

3

review mixed questions of law and fact de novo, particularly when they involve constitutional rights." *Id.*

**{9}** In New Mexico, any individual suspected of criminal conduct who is held for custodial interrogation must be read their *Miranda* rights. *See State v. Smile*, 2009-NMCA-064, ¶ 24, 146 N.M. 525, 212 P.3d 413; *see also State v. Fekete*, 120 N.M. 290, 300, 901 P.2d 708, 718 (1995). For police questioning to qualify as a custodial interrogation and thus trigger a suspect's *Miranda* rights, "the defendant must be in custody and there must be an interrogation." *Smile*, 2009-NMCA-064, ¶ 24. Questioning by investigating officers is not subject to *Miranda* requirements where the defendant is neither in custody nor deprived of freedom in any significant way. *State v. Swise*, 100 N.M. 256, 257-58, 699 P.2d 732, 733-34 (1983). The constitutional privilege against self-incrimination is as applicable in the case of juveniles as it is with respect to adults. *In re Gault*, 387 U.S. 1, 55 (1967).

**{10}** In *Javier M.*, our Supreme Court noted that a person is subject to custodial interrogation when he or she lacks the freedom to leave to an extent equal to formal arrest, in addition to isolation in an environment completely controlled by law enforcement. 2001-NMSC-030, ¶ 18. In this case, Antonio was being questioned by a school administrator while a deputy listened and also administered a sobriety test. Antonio was not taken to a new location or isolated with law enforcement; the office was not controlled by the officer. Sarna testified that, as a school administrator, her goals were the safety of Antonio and other students, rather than a pursuit of a criminal investigation. Because the purpose and location of the questioning were not controlled by law enforcement, we conclude that Antonio was not subject to a custodial investigation.

**{11}** Having determined that Antonio did not experience a custodial interrogation when he was taken to the vice principal's office, we next address whether Antonio was held for an investigatory detention. Because such detentions are routine and fact-finding, they have not generally triggered a defendant's constitutional rights. *See Swise*, 100 N.M. at 257, 669 P.2d at 733.

**B.      *Miranda* Rights for Juveniles in Investigatory Detention**

**{12}** New Mexico has created a statutory exception to the general rule that investigatory detentions do not trigger *Miranda* rights by providing juveniles with heightened protections. *See Javier M.*, 2001-NMSC-030, ¶ 1. Section 32A-2-14(C) provides that "[n]o person . . . who is alleged or suspected of being a delinquent child shall be interrogated or questioned without first advising the child of the child's constitutional rights and securing a knowing, intelligent[,] and voluntary waiver." Section 32A-2-14 provides that a child need not be under custodial interrogation in order to trigger the protections of the statute. *Javier M.*, 2001-NMSC-030, ¶ 1.

**{13}** As a result, *Miranda* rights are triggered when a child is subject to an investigatory detention, which requires less coercive circumstances than a custodial interrogation. *Id.*

4

Investigatory detentions are "[f]ourth [a]mendment seizures of limited scope and duration, [which] are generally public, temporary, and substantially less coercive than custodial interrogations." *Id.* ¶ 19. Investigatory detentions are presumptively brief and not so inherently coercive that the detainee feels compelled to speak. *Id.* An investigatory detention requires a reasonable suspicion of guilt and should be performed to confirm or dispel an officer's suspicion that criminal activity has occurred or is occurring. *Cf. State v. Alderete*, 2011-NMCA-055, ¶ 18, 149 N.M. 799, 255 P.3d 377 (noting that the police "had reasonable suspicion to conduct an investigatory stop of [the d]efendant's vehicle to confirm or dispel their suspicions"); *Javier M.*, 2001-NMSC-030, ¶ 40 (determining that "[t]he statute . . . protects against a child's statements which are made during an investigatory detention in response to a police officer's questioning that could not be mere administrative questions and that is intended to confirm or dispel the officer's suspicions that the child is or has committed a delinquent act"). In all of these situations, as with custodial interrogation, the investigatory detention is initiated and pursued by a police officer.

**{14}** Although other states have enacted statutes that provide juveniles with heightened *Miranda* protections, New Mexico is the only state that requires a reading of *Miranda* rights during an investigatory detention as opposed to a custodial interrogation. Our Supreme Court in *Javier M.* determined that the Legislature intended that Section 32A-2-14 applies when a child is formally charged or seized pursuant to an investigatory detention and is not free to leave. *Javier M.*, 2001-NMSC-030, ¶ 38. The Court in *Javier M.* exempted administrative questions, such as name or age, general on-the-scene questions, or voluntary statements from the child. *Id.* ¶¶ 38-39. It then determined that an investigatory detention is one that is limited, public, temporary, and less coercive than a custodial detention. *Id.* ¶ 19.

**{15}** In *Javier M.*, a police officer asked the defendant to step outside of a residence for questioning on an open stairwell because he had reason to believe that the defendant was under age and had been drinking. *Id.* ¶ 3. Although the defendant was not free to leave, the questioning was brief, done in public, and not so coercive that the child would have felt that he was under arrest. *Id.* ¶ 20. The defendant was not searched nor administered a field sobriety test. *Id.* ¶¶ 3, 20-23. The officers briefly detained the defendant to confirm their suspicion that he had been drinking. *Id.* ¶¶ 3-4. The defendant was charged with delinquency based on his affirmative answer to the officer's questioning. *Id.* ¶ 5. On appeal, the Supreme Court held that the defendant's admission should have been suppressed. *Id.* ¶ 48. The Court determined that he had been held in an investigatory detention and should have been entitled to a reading of his *Miranda* rights. *Id.*

**{16}** In our case, Antonio was taken away from class to the vice principal's office, held in a closed room, and questioned by Sarna, a school administrator, in the presence of a uniformed deputy. Antonio was isolated from the public during Sarna's questioning, but not alone with the deputy, and the deputy asked no questions. Sarna searched his bag. Sarna testified that her interrogation was to ensure the safety of Antonio and other students by determining how much he drank and where the alcohol was disposed. Antonio was not taken

5

from school grounds and, as in *Javier M.,* the detention was "to ensure the safety of the [c]hild and was not adversarial as is the case when an individual is in custodial interrogation." *Id.* ¶ 22. By contrast, an individual is subjected to a custodial interrogation when he or she is "swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to the techniques of persuasion," causing the individual to feel a "compulsion to speak." *Id. ¶* 15 (internal quotation marks and citation omitted).

**{17}** From these circumstances, we conclude that Antonio was subjected to an investigatory detention. We now must determine whether Section 32A-2-14, which extends protections to juveniles in investigatory detentions, retains the requirement in *Miranda* that the protected investigations are conducted by law enforcement officers.

**C.     Public School Official's Questioning Was For School Purposes, Not Law Enforcement**

**{18}**     In *Miranda*, the United States Supreme Court held that the Fifth Amendment right against self-incrimination applies to custodial interrogations conducted by law enforcement officers. In New Mexico, if police officers detain a minor to confirm or dispel subjective suspicions of a child's delinquency, the officers must inform the child of his or her right to remain silent under Section 32A-2-14. Section 32A-2-14 has thus far only been applied in cases where law enforcement has interrogated or detained a child, never in instances of school discipline involving only a school administrator. *See, e.g.*, *State v. Martinez*, 1999-NMSC-018, ¶ 4, 127 N.M. 207, 979 P.2d 718; *State v. Randy J.*, 2011-NMCA-105, ¶¶ 2-3, 150 N.M. 683, 265 P.3d 734; *State v. Adam J.*, 2003-NMCA-080, ¶ 2, 133 N.M. 815, 70 P.3d 805; *In re Bruno R.*, 2003-NMCA- 057, ¶¶ 7-8, 133 N.M. 566, 66 P.3d 339.

**{19}** Other states have declined to view a school administrator as an agent for law enforcement and permitted testimony obtained without *Miranda* warnings during a student interrogation. *See, e.g.*, *In re Brendan H.*, 372 N.Y.S.2d 473, 477 (N.Y. Fam. Ct. 1975); *State v. J.T.D.*, 851 So. 2d 793, 795 (Fla. Dist. Ct. App. 2003) (holding that "the assistant principal was not an agent of the police . . . [g]iven that finding, *Miranda* warnings were not necessary in this case"); *People v. Butler*, 725 N.Y.S.2d 534, 540 (Sup. Ct. 2001) (holding that "the interrogation must be by a public servant engaged in law enforcement or a person acting in cooperation with, or under the direction of, or as an agent of a law enforcement officer" to require *Miranda* warnings); *J.D. v. Commonwealth*, 591 S.E.2d 721, 724 (Va. Ct. App. 2004) (determining that the principal "was not acting as a police officer or as a governmental agent with law enforcement authority" and basing its holding on the weight of authority from "[n]umerous appellate courts from other states [that] have concluded that a school principal or other school official who questions a student about a possible violation of law or school regulation does not, absent other circumstances, act as a law enforcement officer or agent of the state with law enforcement authority"); *S.G. v. State*, 956 N.E.2d 668, 680 (Ind. Ct. App. 2011) (holding that an investigation initiated by a principal, who summoned the school police officer to be present, did not require *Miranda* protections and stating that "[p]olice cannot avoid their duty under *Miranda* by attempting to have someone

6

act as their agent in order to bypass the *Miranda* requirements").

**{20}** In the cases above, the courts determined that the mere presence of an officer did not transform a school official's interrogation into an action by law enforcement that requires *Miranda* rights. We have recognized:

> The special relationship between teacher and student . . . distinguishes the setting within which schoolchildren operate. Law enforcement officers function as adversaries of criminal suspects. These officers have the responsibility to investigate criminal activity, to locate and arrest those who violate our laws, and to facilitate the charging and bringing of such persons to trial. Rarely does this type of adversarial relationship exist between school authorities and pupils. Instead, there is a commonality of interests between teachers and their pupils.

*State v. Tywayne H.*, 1997-NMCA-015, ¶ 12, 123 N.M. 42, 933 P.2d 251 (internal quotation marks and citation omitted). We have also recognized that most school house interrogations are conducted for the purpose of discovering violations of school rules or social maladjustments and trying to correct the problem. *Doe v. State*, 88 N.M. 347, 353, 540 P.2d 827, 833 (Ct. App. 1975). We have stated that "[g]iving *Miranda*-type warnings would only frustrate this purpose. It would put the school official and student in an adversary position. This would be in direct opposition to the school official's role of counselor." *Id.* (emphasis added). School officials receive leeway because "maintaining security and order in the schools requires . . . flexibility . . . and we have respected the . . . informality of the student-teacher relationship." *Tywayne H.*, 1997-NMCA-015, ¶ 12 (internal quotation marks and citation omitted). Therefore, based on the weight of authority and the special goals of school interrogations, we determine that Section 32A-2-14 applies to investigations by or on behalf of law enforcement officials. We now evaluate whether Sarna's investigation was on behalf of law enforcement.

**{21}** The test to determine whether someone acts as an agent for law enforcement is laid out in *State v. Santiago*, 2009-NMSC-045, 147 N.M. 76, 217 P.3d 89. In *Santiago*, mall security guards apprehended the defendant in a parking lot and tackled, subdued, and handcuffed him before discovering a pill bottle containing cocaine in his pocket. *Id.* ¶ 2. Police arrived shortly thereafter, confiscated the drugs, and took the defendant into custody. *Id.* ¶ 3. The defendant moved to suppress the evidence, claiming that the security guards had acted as agents of the police, thus implicating his constitutional rights. *Id.* ¶ 4. The Court determined that the state action doctrine did not apply, and the security guards were not acting as agents of state law enforcement. *Id.* ¶ 28. In making this determination, the Court considered (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends. *Id.* ¶ 18.

**{22}** We apply the test used in *Santiago* to determine whether Sarna acted as an agent for

7

the police while interrogating Antonio. First, we ask whether the government knew of and acquiesced in the intrusive conduct. *Id.* In *Santiago*, the Court found that because the police were neither present during, nor had direct knowledge of the search of the suspect, the first prong of the agency test could not be satisfied. *Id.* ¶¶ 19-20. Here, Deputy Charley had direct knowledge of and participated in the search that is at issue. The deputy aided in the investigation when he conducted the PBT and when he left to check the trash cans in the bathroom. Though Sarna directed the deputy to take both of these actions, the deputy assumed full control over the investigation of the bathrooms, leaving Sarna and Antonio in the office. Moreover, the deputy directly administered the PBT to Antonio. Sarna testified that she was not properly trained to administer a PBT. The deputy's service was an indispensable part of Sarna's investigation. Because the deputy was present almost the entire time and participated in fact finding, he both knew of and acquiesced in the investigation. Thus, his actions satisfy the first prong of the agency test.

**{23}** In turning to the second prong, we ask whether the party performing the interrogation intended to assist law enforcement efforts or to further his or her own ends. *Id.* ¶ 18. Sarna did not overstep her duties as a school administrator to assist law enforcement when she directed Deputy Charley to administer the PBT or to search the bathroom. Sarna's determination of how much Antonio had been drinking, and if other students had been drinking with him, directly served the interests of the school, as well as Antonio's health and safety. Sarna testified that she needed to know if Antonio had consumed other intoxicants with the alcohol or by themselves to assess whether Antonio was in danger. The bathroom was searched by the deputy to ensure that alcohol was not left out for other students to find and consume. These actions served the school's interests in a safe environment, even though they may have also served a police interest. A school administrator has a legitimate interest in preserving the safety and harmony of a school zone and its occupants. It is important to a school administrator to know if a child is intoxicated and whether drugs or alcohol were accessible to other students. We cannot say that Sarna acted in some capacity beyond the scope of her employment to specifically aid law enforcement efforts. Section 32A-2-14 does not require that Antonio be given *Miranda* warnings in this case.

**{24}** We conclude that Sarna was not acting to assist law enforcement beyond the scope of her duties as a school administrator. The school had a legitimate independent motivation or private interest in conducting the investigation, and we therefore reason that Sarna was not acting as an agent for law enforcement.

**{25}** Although an amicus brief argues that the confession was not voluntary, Antonio does not raise the issue, and thus we do not address it. Amicus curiae must accept cases on issues as raised by parties and cannot assume the functions of a party. *State ex rel. Castillo Corp. v. N.M. State Tax Comm'n*, 79 N.M. 357, 362, 443 P.2d 850, 855 (1968).

### III. CONCLUSION

**{26}** For the above reasons, we conclude that, although this was an investigatory

detention, Antonio had no right to *Miranda* warnings from a school administrator for a school interrogation, despite the presence of a deputy. We affirm the district court.

**{27}   IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for *State v. Antonio T.*, No. 30,827**

**CHILDREN**
Detention

**CONSTITUTIONAL LAW**
Miranda Warnings
Waiver of Rights

**CRIMINAL LAW**
Intoxication

**CRIMINAL PROCEDURE**
Confession
Detention or Custody
Miranda Warnings
Waiver

**GOVERNMENT**
Education and Schools