IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2015-NMSC-019

Filing Date: June 22, 2015

Docket No. 33,997

STATE OF NEW MEXICO,

      Plaintiff-Respondent,

v.

ANTONIO T., a child,

      Defendant-Petitioner,

Consolidated with:

Docket No. 33,999

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

ANTONIO T., a child,

      Defendant-Respondent.

ORIGINAL PROCEEDINGS ON CERTIORARI
Sandra A. Price, District Judge

Jorge A. Alvarado, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Petitioner and Respondent Antonio T.

Gary K. King, Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Respondent and Petitioner State of New Mexico

**OPINION**

**CHÁVEZ, Justice.**

**{1}**     Having granted the State's motion for rehearing in this case, we withdraw the opinion filed October 23, 2014, and substitute the following in its place.

**{2}**     Antonio, a seventeen-year-old high school student, was taken to Assistant Principal Vanessa Sarna's (Principal Sarna) office because he was suspected of being under the influence of alcohol.  Possession of alcohol by a minor is a delinquent act under NMSA 1978, Section 32A-2-3(A)(2) (2009) of the Delinquency Act, NMSA 1978, §§ 32A-2-1 to -33 (1993, as amended through 2009).  Principal Sarna questioned Antonio about his possession of alcohol in the presence of Deputy Sheriff Emerson Charley, Jr. (Deputy Charley), whom she had asked to be present, and requested that he bring a breath alcohol test to be administered to Antonio.  Antonio admitted that he had brought alcohol to school, where he consumed it.  At Principal Sarna's request, Deputy Charley administered the breath test to Antonio, which tested positive for alcohol.  After administering the test to Antonio, Deputy Charley advised Antonio of his right to remain silent, and Antonio declined to answer Deputy Charley's questions about his possession of alcohol.

**{3}**     Antonio was charged with the delinquent act of possession of alcohol by a minor. He filed a motion to suppress the statements he made to Principal Sarna because his statements were elicited without a knowing, intelligent, and voluntary waiver of his right to remain silent, citing Section 32A-2-14(D).  The district court denied his motion, which was affirmed by the Court of Appeals. *State v. Antonio T.*, 2013-NMCA-035, ¶ 26, 298 P.3d 484. We reverse both the district court and the Court of Appeals.  Although a school official may insist that a child answer questions for purposes of school disciplinary proceedings, any statements elicited by the official in the presence of a law enforcement officer may not be used against the child in a delinquency proceeding unless the child made a knowing, intelligent, and voluntary waiver of his or her statutory right to remain silent. Section 32A-2-14(C), (D).  Because the State failed to prove that Antonio effectively waived this statutory right, his statements were inadmissible in the delinquency proceeding.

## I.     BACKGROUND

**{4}**     Two teachers at Kirtland Central High School (KCHS) escorted Antonio to Principal Sarna's office because they suspected he was under the influence of alcohol. Principal Sarna called the student resource officer on duty, Deputy Charley, to administer a portable breath test to Antonio.  Deputy Charley is a certified law enforcement officer with the San Juan County Sheriff's Office who spent over eleven years on the police force before being assigned to KCHS as a student resource officer.  Deputy Charley wears a full uniform, including his badge and duty belt with a holstered gun, to work in the school.  He was wearing his uniform and his sidearm when he entered Principal Sarna's office.

2

**{5}** Deputy Charley stood about five feet away from Antonio, preparing the breath test, while Principal Sarna questioned Antonio about drinking alcohol at school. Deputy Charley's normal procedure was to question a student suspected of using alcohol prior to administering a breath alcohol test. However, in this instance, because Principal Sarna was asking questions that were identical to the ones that Deputy Charley would have asked, he merely listened attentively to Principal Sarna's questioning "in case something [did] come up . . . further on in the investigation that [he] might have to look back onto." Principal Sarna asked Antonio if he had been drinking, what he had to drink, how much he had consumed, and if anyone else was drinking with him. Principal Sarna testified that she told Antonio that he would receive a lesser term of suspension if he told her the truth. These kinds of questions and bargains were routine for Principal Sarna because her job is to enforce discipline at KCHS, where she often deals with student disciplinary cases "just one right after another." In response to Principal Sarna's questions, Antonio admitted that he had consumed two shots of alcohol, he had brought the alcohol to school in a soda or Gatorade bottle, and he had disposed of the bottle in a bathroom trash can east of the school library.

**{6}** After Antonio confessed to consuming alcohol, Deputy Charley advised Antonio that he would have to blow into the portable breath test machine, which Antonio did; Antonio tested positive for alcohol, which corroborated his confession. No parent or guardian was present, and Deputy Charley did not provide Antonio with any *Miranda* warnings prior to administering the breath test because at that time he "was going by what the school was requesting." While Deputy Charley was administering the breath test, Principal Sarna searched Antonio's backpack and located a folding pocketknife.[1]

**{7}** Principal Sarna then asked Deputy Charley to search for the plastic bottle that Antonio claimed he threw away. Deputy Charley searched three trash cans in the vicinity of the bathroom near the library, but he could not find the bottle. After the search for evidence turned up nothing, Deputy Charley returned to Principal Sarna's office and advised Antonio of his full constitutional rights as announced in *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). Antonio answered Deputy Charley's questions about the knife, but he refused to answer Deputy Charley's questions regarding alcohol consumption. The statements Antonio made during Principal Sarna's questioning were documented in Deputy Charley's police report under the "investigation" heading. Deputy Charley confiscated the pocketknife that Principal Sarna found in Antonio's backpack. The State later charged

---

[1]Principal Sarna and Deputy Charley were the only two witnesses to testify in this case. Their stories differed as to when the knife was discovered and whether or not Deputy Charley was present when Antonio was questioned by Principal Sarna. Principal Sarna testified that she could not be sure of the sequence of events, and Deputy Charley's testimony and his police report reflect that he was present during Principal Sarna's questioning and her search of Antonio's backpack. The district court found that Deputy Charley was present. "[W]hen there is a conflict in the testimony, we defer to the trier of fact." *Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33.

Antonio only with possession of alcoholic beverages by a minor.

**{8}** Antonio filed a motion to suppress his statement or confession pursuant to Section 32A-2-14(C) through (E), contending that "the State cannot prove that the statement or confession offered in evidence was elicited after a knowing, intelligent and voluntary waiver of the Child's rights and must be suppressed." Antonio specifically cited Section 32A-2-14(D), which "requires that the state 'shall prove the statement or confession offered in evidence was elicited only after a knowing, intelligent and voluntary waiver of the child's constitutional rights was obtained.' " Antonio requested the district court find that he "did not knowingly, intelligently and voluntarily waive constitutional and statutory rights and suppress any statements or confession."

**{9}** An evidentiary hearing was held on Antonio's motion to suppress on September 1, 2010. After hearing testimony from Principal Sarna and Deputy Charley, the district court denied the motion. Antonio entered into a conditional plea and disposition agreement, reserving his right to appeal the denial of his motion to suppress. He appealed to the New Mexico Court of Appeals, which affirmed the district court's ruling. *Antonio T.*, 2013-NMCA-035, ¶ 26.

**{10}** The Court of Appeals analyzed the suppression as a constitutional issue, discussing the constitutional rights of children during custodial interrogation, *id.* ¶¶ 8-10, and investigatory detentions, *id.* ¶¶ 12-16. It first concluded that Antonio had been subject to an investigatory detention, not a custodial interrogation. *Id.* ¶¶ 11, 17. The Court of Appeals noted that "Section 32A-2-14 has thus far only been applied in cases where law enforcement has interrogated or detained a child, never in instances of school discipline involving only a school administrator," *Antonio T.*, 2013-NMCA-035, ¶ 18, and that "Section 32A-2-14 applies to investigations by or on behalf of law enforcement officials," *Antonio T.*, 2013-NMCA-035, ¶ 20. The Court of Appeals then determined that Principal Sarna was acting within the scope of her duties as a school administrator and was not acting as an agent for law enforcement, and accordingly concluded that she was not obligated to issue *Miranda* warnings to Antonio. *Id.* ¶¶ 24, 26. The Court of Appeals did not address Antonio's statutory claim that his statement was inadmissible under the plain language of Section 32A-2-14(D), which was the original basis for Antonio's motion to suppress. Both Antonio and the State appealed to this Court.

**{11}** We granted certiorari on two questions raised in Antonio's appeal: (1) did the Court of Appeals err in affirming the lower court's denial of Antonio's suppression motion, and (2) was the plea invalid because there was insufficient evidence? *State v. Antonio T.*, 2013-NMCERT-003 (No. 33,997, Mar. 1, 2013). We also granted certiorari on one question raised in the State's appeal: did the Court of Appeals err in holding that Antonio was in investigatory detention? *State v. Antonio T.*, 2013-NMCERT-003 (No. 33,999, Mar. 1, 2013). We hold that Deputy Charley's mere presence during Principal Sarna's questioning of Antonio subjected Antonio to an investigatory detention that triggered the statutory protections provided by Section 32A-2-14(C) and (D). Pursuant to Section 32A-2-14(C),

4

Deputy Charley was required to advise Antonio that he had a right to remain silent, and that if Antonio waived the right, anything he said could be used against him in criminal delinquency proceedings. Because Deputy Charley failed to advise Antonio of this statutory right before Principal Sarna questioned Antonio in his presence, Antonio's incriminating statements are inadmissible under Section 32A-2-14(D).

## II.    DISCUSSION

{12}    This case requires us to analyze whether a statement made by a child over the age of fifteen is admissible under Section 32A-2-14, when the statement was made in response to questioning by a school principal in the presence of a law enforcement officer. Children who commit an act that would be considered a crime if they were over the age of eighteen are subject to the Delinquency Act and are granted certain basic statutory rights under Section 32A-2-14. The admissibility of Antonio's statements is dependent on our interpretation of the Delinquency Act. Because statutory interpretation is a question of law, we review it de novo. *See State v. Jade G.*, 2007-NMSC-010, ¶ 15, 141 N.M. 284, 154 P.3d 659.

**A.    Pursuant to Section 32A-2-14(D), Antonio's statements were inadmissible because he was questioned during an investigatory detention without being first advised of the right to remain silent as required by Section 32A-2-14(C)**

{13}    In *State v. Javier M.*, 2001-NMSC-030, ¶¶ 32, 42, 131 N.M. 1, 33 P.3d 1, we held that the Legislature intended Section 32A-2-14 to afford children greater statutory protection than what is constitutionally mandated. We evaluated the admissibility of a child's statements made in response to police questioning by first assessing the minimum constitutional guarantees available to the child under the United States Supreme Court's decision in *Miranda*. *Javier M.*, 2001-NMSC-030, ¶ 11 ("Only after assessing the minimum constitutional guarantees available to the Child under *Miranda* can we adequately interpret Section 32A-2-14 and determine what, if any, additional protections are available to the Child under the statute.").

{14}    We recognized that *Miranda* "imposed a prophylactic protection by requiring that suspects be advised of their rights under the Fifth Amendment [of the United States Constitution] prior to any questioning" during a custodial interrogation. *Javier M.*, 2001-NMSC-030, ¶ 14. "Custodial interrogation occurs when [a]n individual [is] swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to the techniques of persuasion . . . [so that the individual feels] under compulsion to speak." *Id.* ¶ 15 (alterations in original) (internal quotation marks and citation omitted). When a suspect is subjected to a custodial interrogation, that person " 'must be warned that he [or she] has a right to remain silent, that any statement he [or she] does make may be used as evidence against him [or her], and that he [or she] has a right to the presence of an attorney, either retained or appointed.' " *Id.* (quoting *Miranda*, 384 U.S. at 444). In *Javier M.*, we held that the child was not subjected to a custodial interrogation because the "Child's

detention was not overly 'police dominated,' " the child was not swept away from familiar surroundings, and the child was questioned in a public place in the presence of several other suspects. *See id.* ¶¶ 21-23. Accordingly, in *Javier M.* we held that "the officer was not required to '*Mirandize*' the Child before questioning him." *Id.* ¶ 23.

**{15}** Having concluded that the child was not entitled to the constitutional protections guaranteed by *Miranda*, this Court turned to the Delinquency Act to analyze whether it provided the child with any additional statutory protection. *Javier M.*, 2001-NMSC-030, ¶¶ 24-32. As a preliminary matter, we acknowledged that "it is completely within the Legislature's authority to provide greater *statutory protection* than accorded under the federal Constitution." *Id.* ¶ 24 (emphasis added). In interpreting Section 32A-2-14, we focused on three issues: (1) whether the Legislature intended to merely codify *Miranda* under the statute by requiring that children be subjected to custodial interrogations before statutory protections are triggered, (2) the circumstances under which statutory protections would be triggered if the Legislature did not intend to codify *Miranda*, and (3) the nature of the statutory protections afforded under the statute. *Javier M.*, 2001-NMSC-030, ¶ 25.

**{16}** After looking at its plain language, this Court rejected the notion that Section 32A-2-14 was intended to codify the advice of constitutional rights announced in *Miranda*. *Javier M.*, 2001-NMSC-030, ¶ 29. "Instead of using *Miranda* triggering terms such as 'custody' or 'custodial interrogation,' the Legislature used much broader terms, such as, 'alleged,' 'suspected,' 'interrogated,' and 'questioned.' " *Javier M.*, 2001-NMSC-030, ¶ 29 (quoting Section 32A-2-14(C)). Accordingly, we held that Section 32A-2-14 did not require a child to be subject to a custodial interrogation in order for the additional statutory protections to apply. *Javier M.*, 2001-NMSC-030, ¶ 32.

**{17}** After determining that a custodial interrogation was not required, we then turned to the question of what circumstances would trigger the protections of Section 32A-2-14. In *Javier M.*, we stated that " 'alleged' " pertained to the "time period after which a formal petition alleging delinquency has been filed in the Children's Court" and defined " 'suspect' " as meaning " 'to imagine (one) to be guilty or culpable.' " *Id.* ¶ 29 (quoting *Webster's Ninth New Collegiate Dictionary* 1189 (1985) (second alteration in original)). We reasoned that "an officer's suspicion will almost always cause the encounter with the child to be an investigatory detention," *Javier M.*, 2001-NMSC-030, ¶ 35, and that "by including the term 'suspected' in Section 32A-2-14(C) to describe when the statute's protections are triggered, the Legislature intended to draw the line at investigatory detentions." *Javier M.*, 2001-NMSC-030, ¶ 36. We concluded that "when an officer approaches a child to ask the child questions because the officer 'suspects' the child of delinquent behavior, the officer is performing an investigatory detention." *Id.* ¶ 37. "Given a child's possible immaturity and susceptibility to intimidation, a child who is subject to an investigatory detention may feel pressures similar to those experienced by adults during custodial interrogation." *Id.* As a result, we held that "the protections of the statute are triggered in two circumstances: (1) after formal charges have been filed against a child; and (2) when a child is seized pursuant to an investigatory detention and not free to leave." *Id.* ¶ 38.

6

**{18}**     Finally, in defining the scope of the protections afforded under the statute, we held that the term " 'constitutional rights' " in Section 32A-2-14(C) does not refer to the warnings enumerated in *Miranda* where the child is subject to an investigatory detention and not a custodial interrogation. *Javier M.*, 2001-NMSC-030, ¶ 41. Instead, we held that "children who are subject to investigatory detentions [have a statutory right] *only* to be warned of their right to remain silent and that anything they say can be used against them." *Id.* ¶ 41 (emphasis added).

**{19}**     Under the reasoning in *Javier M.*, if Antonio was subjected to an investigatory detention, the basic statutory right at issue in this case is the right to remain silent. Because children may not understand either their right to remain silent or that they are entitled to assert this statutory right, the Legislature has detailed which procedural safeguards must be satisfied before any statement made by a child is admitted as evidence in a criminal delinquency proceeding. Under Section 32A-2-14(C), a child who is suspected or alleged of having committed a delinquent act cannot be interrogated or questioned during an investigatory detention unless the child is first advised of his or her statutory right to remain silent and the child knowingly, intelligently, and voluntarily waives his or her rights. When Section 32A-2-14(C) has been violated, the legislative remedy is to preclude the admission of any statement or confession elicited from the child in court proceedings. Section 32A-2-14(D); *Javier M.*, 2001-NMSC-030, ¶¶ 1, 27.

**{20}**     To determine whether a child's statement or confession may be introduced into evidence, the State bears the burden of proving that the child knowingly, intelligently, and voluntarily waived the child's statutory right to remain silent. Section 32A-2-14(D). In assessing the validity of an alleged waiver, Section 32A-2-14 requires the court to consider (1) the age of the child, (2) whether the child's statement was elicited or volunteered, (3) whether the child was advised of his or her statutory right to remain silent before the statement was elicited, and (4) the additional criteria listed in Section 32A-2-14(E).

**{21}**     If the child is less than thirteen years old, under no circumstances may his or her statement be introduced against the child in court proceedings. Section 32A-2-14(F) provides that "[n]otwithstanding any other provision to the contrary, no confessions, statements or admissions may be introduced against a child under the age of thirteen years on the allegations of the petition." In *Jade G.*, we held that Section 32A-2-14(F) erects an absolute bar to the admission of any statement made by a child under the age of thirteen—even statements that the child spontaneously volunteers to family members, friends, or others who are not in a position of authority. *See* 2007-NMSC-010, ¶ 16. For children who are thirteen or fourteen years old, the Legislature has created a rebuttable presumption that their confessions, statements, or admissions are inadmissible in court proceedings if such statements were made to a person in a position of authority. Section 32A-2-14(F).

**{22}**     If the child is fifteen years old or older, as in this case, his or her statement is admissible if it was made spontaneously by the child without prompting—i.e., if it was not

7

elicited. Section 32A-2-14(D), (F). "[V]olunteered statements of any kind are . . . not subject to the protections of Section 32A-2-14 since such statements are generally not in response to any 'questioning' or 'interrogation.' " *Javier M.*, 2001-NMSC-030, ¶ 40. However, if the statement or confession was elicited during an investigatory detention, the State must prove that the child was advised of his or her statutory right to remain silent and knowingly, intelligently, and voluntarily waived this right. *Id*. ¶¶ 40, 44. The question before this Court is whether Antonio was subjected to an investigatory detention triggering the protections of Section 32A-2-14 when Principal Sarna questioned him about delinquent behavior in the presence of a law enforcement officer. Unlike the Court of Appeals, we answer this question in the affirmative.

1.      ***When a child suspected of delinquent behavior is questioned in the presence of a law enforcement officer, that child is subjected to an investigatory detention***

**{23}**    The Court of Appeals interpreted Section 32A-2-14(D) to preclude only statements or confessions elicited by law enforcement officers or their agents. *Antonio T.*, 2013-NMCA-035, ¶ 20 (holding that all of the basic rights of children enumerated in Section 32A-2-14 only apply "to investigations by or on behalf of law enforcement officials"). The Court of Appeals noted that "Section 32A-2-14 has thus far only been applied in cases where law enforcement has interrogated or detained a child, never in instances of school discipline involving only a school administrator." *Antonio T.*, 2013-NMCA-035, ¶ 18. Accordingly, the Court of Appeals concluded that Section 32A-2-14 only applies when a law enforcement officer interrogates or detains a child, or when the school official acts as an agent of law enforcement. *Antonio T.*, 2013-NMCA-035, ¶¶ 18-20. Because the Court of Appeals found that Deputy Charley did not interrogate or detain Antonio, the Court focused solely on whether Principal Sarna acted as an agent of law enforcement beyond the scope of her duties as a school administrator. *Id*. ¶¶ 21-24. Concluding that Principal Sarna was not acting as an agent to law enforcement, the Court of Appeals held that "although this was an investigatory detention, Antonio had no right to *Miranda* warnings from a school administrator for a school interrogation, despite the presence of a deputy." *Antonio T.*, 2013-NMCA-035, ¶ 26.

**{24}**    We begin our analysis by first acknowledging that Principal Sarna suspected Antonio of being intoxicated while at school—a school disciplinary violation that would also render him a delinquent child. This suspicion prompted Principal Sarna to conduct an investigation into Antonio's alcohol consumption. We agree with the Court of Appeals that Principal Sarna's suspicion alone did not trigger the protections under Section 32A-2-14(C), because Principal Sarna is neither a law enforcement officer nor was she acting as an agent of law enforcement. *See Antonio T.*, 2013-NMCA-035, ¶ 20. Questioning a child for school disciplinary matters is distinguishable from questioning a child for suspected criminal wrongdoing. *See In re Julio L.*, 3 P.3d 383, 385 (Ariz. 2000) (en banc) ("[N]ot every violation of public decorum or of school rules gives legal cause for criminal adjudication."). Because "maintaining security and order in . . . schools requires a certain degree of flexibility in school disciplinary procedures," we recognize "the value of preserving the

8

informality of the *student-teacher relationship*." *New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985) (emphasis added). Accordingly, Principal Sarna was entitled to act on her suspicion and compel answers from Antonio for the purposes of school discipline. *See In re Doe*, 1975-NMCA-108, ¶ 29, 88 N.M. 347, 540 P.2d 827 (stating that in-school disciplinary matters, unlike criminal proceedings, do not require *Miranda* warnings). Absent any agency relationship between school officials and law enforcement authorities, interrogating Antonio alone in her office about school disciplinary matters would not have constituted an investigatory detention. *See State v. Santiago*, 2009-NMSC-045, ¶ 18, 147 N.M. 76, 217 P.3d 89 (providing the test to determine whether someone acts as an agent of law enforcement).

**{25}** However, the character of Principal Sarna's school disciplinary investigation changed once she requested Deputy Charley to be present when she questioned Antonio about his suspected delinquent behavior. While the State maintains that Deputy Charley's presence in the room was innocuous, Deputy Charley's presence in the room created a coercive and adversarial environment that does not normally exist during interactions between school officials and students. *See T.L.O.*, 469 U.S. at 349-50 (Powell, J., concurring). Unlike school officials, whose primary duties focus on "the education and training of young people[,] . . . [l]aw enforcement officers function as adversaries of criminal suspects. These officers have the responsibility to investigate criminal activity, to locate and arrest those who violate our laws, and to facilitate the charging and bringing of such persons to trial." *See id.* (Powell, J., concurring).

**{26}** Deputy Charley's mere presence during Principal Sarna's questioning of Antonio converted the school disciplinary interrogation into a criminal investigatory detention, and it therefore triggered the protections provided by Section 32A-2-14(C). Before encountering Antonio, Deputy Charley was already on notice that Antonio was suspected of delinquent behavior. Principal Sarna testified that she involved Deputy Charley in the school's investigation so he would know that Antonio was under the influence, and also to test Antonio's breath for alcohol. As Principal Sarna interrogated Antonio about his suspected delinquent behavior, Deputy Charley noticed that Antonio's speech was slurred and slow. During Antonio's interrogation, Deputy Charley stood about five feet away from Antonio preparing a portable breath alcohol test while wearing a full uniform, including his badge and duty belt with a holstered gun. At a minimum, Antonio was not free to leave Principal Sarna's office until Deputy Charley administered the portable breath alcohol test to Antonio.

**{27}** Deputy Charley's presence in the room not only created a coercive and adversarial environment, it also granted him access to evidence necessary to prosecute criminal delinquent behavior. Apparently anticipating that Antonio's responses would have bearing on a future criminal investigation and other proceedings, Deputy Charley listened attentively to the interrogation. To this end, he testified that it is important for him to listen to whether a child admits or denies consuming alcohol before administering the portable alcohol test to confirm or deny the child's statements. Deputy Charley simply uses the portable alcohol test as a pseudo lie detector test during his criminal investigation to corroborate any elicited

9

statements or confessions. This is important because Antonio's incriminating statements that he drank alcohol alone would support a school suspension, although the confession alone would not support a criminal conviction under the statutory corpus delicti doctrine. *See* § 32A-2-14(G).

**{28}**     The statutory corpus delicti requirement provides that "[a]n extrajudicial admission or confession made by the child out of court is insufficient to support a finding that the child committed the delinquent acts alleged in the petition unless it is corroborated by other evidence." *See id*.  As a result, the State could not have prosecuted Antonio solely on his statement or confession. *Id*.  Deputy Charley's presence in Principal Sarna's office as she questioned Antonio granted the State access to both Antonio's incriminating statements and the results of the portable breath alcohol test, which corroborated Antonio's confession.

**{29}**     We disagree with the State's characterization of Deputy Charley's involvement in Principal Sarna's questioning of Antonio.  We acknowledge that Deputy Charley did not escort Antonio to Principal Sarna's office, ask Antonio any questions himself, or tell Principal Sarna which questions to ask Antonio.  Nonetheless, Deputy Charley's mere presence in Principal Sarna's office as Principal Sarna questioned Antonio subjected Antonio to an investigatory detention.  Pursuant to Section 32A-2-14(C), Deputy Charley was required to advise Antonio that he had a statutory right to remain silent, and if Antonio waived that right, anything he said could be used against him in criminal delinquency proceedings.  Deputy Charley must have been aware that Antonio's statements would be inadmissible absent a valid waiver of his right to remain silent, as was evidenced by the fact that Deputy Charley subsequently advised Antonio of his right to remain silent prior to attempting to question him again about his consumption of alcohol.

**2.**     *Antonio's statements were inadmissible because he did not waive his right to remain silent as required by Section 32A-2-14(D)*

**{30}**     Section 32A-2-14(D) provides that before any incriminating statement "may be introduced at a trial or hearing when a child is alleged to be a delinquent child, the state shall prove that the statement or confession offered in evidence was elicited only after a knowing, intelligent and voluntary waiver of the child's constitutional rights was obtained."  A knowing, intelligent, and voluntary waiver cannot be obtained if the child has not first been advised of his or her statutory right to remain silent.  Accordingly, Section 32A-2-14(D) provides the legal remedy for violations of Section 32A-2-14(C).

**{31}**     Antonio moved to suppress the incriminating statements he made to Principal Sarna based on the plain language mandate of Section 32A-2-14(D) that for the statements to be admissible against him in a delinquency proceeding, "the state shall prove that the statement or confession offered in evidence was elicited only after a knowing, intelligent and voluntary waiver of the child's constitutional rights was obtained."  Because the language of the statute is clear, it is proper to apply it as written. *State v. Jonathan M.*, 1990-NMSC-046, ¶ 4, 109 N.M. 789, 791 P.2d 64 ("When a statute contains language which is clear and unambiguous,

we must give effect to that language and refrain from further statutory interpretation."). In this case, the district court should have granted Antonio's motion to suppress his statements because Antonio's statements were elicited by Principal Sarna before he was warned and without Antonio having knowingly, intelligently, and voluntarily waived his statutory right to remain silent. It is undisputed that Antonio refused to repeat the statements after Deputy Charley advised him of his right to remain silent. Antonio appeared to have understood that his answers to Principal Sarna's questions would affect his discipline under school rules, but once Deputy Charley questioned him, he then potentially faced criminal charges. Because the State could not prove that the statements were made after warnings and a valid waiver as required by Section 32A-2-14(D), the statements were inadmissible. As a result, the State failed to meet its burden of proof under Section 32A-2-14(D).

{32}     We emphasize that our holding in this case should not be construed to require school administrators to advise a child of his or her right to remain silent in order to use incriminating statements elicited from the child against that child in school disciplinary proceedings. We emphasized in *State v. Nick R.* that "[nothing] in this opinion [is] intended to impair the existing authority of school authorities to promulgate and enforce administrative security measures." 2009-NMSC-050, ¶¶ 44-48, 147 N.M. 182, 218 P.3d 868 (affirming school policies prohibiting pocketknives on campus, but holding that a pocketknife was not a "deadly weapon" for purposes of adjudication in Children's Court (quoting with approval *State v. Doe*, 92 P.3d 521, 525 (Idaho 2004) ("[P]ublic school officials [have] an effective means of disciplining unruly or disruptive pupils in an administrative fashion." (alterations in original) (internal quotation marks and citation omitted)))); *State v. Tywayne H.*, 1997-NMCA-015, ¶ 13, 123 N.M. 42, 933 P.2d 251 ("[T]here is a sharp distinction between the purpose of a search by a school official and a search by a police officer. The nature of a . . . search by a school authority is to maintain order and discipline in the school. The nature of a search by a police officer is to obtain evidence for criminal prosecutions." (internal citation omitted)). Similarly, in this case, a plain language reading of Section 32A-2-14(D) demonstrates that it is a bar to the admissibility of children's confessions in delinquency proceedings if the confession was elicited in the presence of a law enforcement officer or a school official who was acting as an agent of law enforcement; in no way does this section prevent children's confessions from being used against them during school disciplinary proceedings.

## III.   CONCLUSION

{33}     We hold that Section 32A-2-14(D) precluded the use of Antonio's self-incriminating statements against him in a delinquency proceeding. Accordingly, we  reverse both the district court and the Court of Appeals. We remand to the district court, where Antonio shall be permitted to withdraw his plea if he so chooses.

{34}   **IT IS SO ORDERED.**

_____

　　　　　　　　　　　　　　　　　　**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____

**BARBARA J. VIGIL, Chief Justice**

_____

**PETRA JIMENEZ MAES, Senior Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**CHARLES W. DANIELS, Justice**