2007-NMCA-160

173 P.3d 18

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Sergio Arturo MARTINEZ,**
**Defendant–Appellant.**

No. 25,858.

Court of Appeals of New Mexico.

Oct. 4, 2007.

Certiorari Denied, No. 30,726,
Nov. 20, 2007.

Gary K. King, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} Defendant appeals his convictions of five counts of first-degree criminal sexual penetration of a minor and eight counts of fourth-degree criminal sexual penetration of a minor (CSPM). NMSA 1978, § 30–9–11(C)(1), (F)(1) (2001). Defendant makes two arguments. First, he contends that his due process rights were violated and that his conviction violates double jeopardy because the indictment and the jury instructions were not sufficiently particular as to the crimes charged. In his second argument, Defendant argues that he was prejudiced by ineffective assistance of counsel. We affirm.

## I. BACKGROUND

{2} The facts of this case are based on the sexual relationship between Child and Defendant, her older cousin. Defendant came from Mexico and worked as a baker in El Paso; he had come to the United States to further his education. During the time the events in this case took place, he first lived with Child's uncle and then in Child's home. Child Protective Services was called to investigate their relationship after the discovery of a letter from Child to Defendant, which she wrote because she "wanted everything to stop" but could not tell Defendant face to face. At first, Child denied that anything improper had occurred. As the investigation developed, however, Child admitted the sexual relationship. According to Child, she and Defendant first engaged in sexual intercourse in her uncle's home in Vado, New Mexico, on New Year's Eve in 2001; she was twelve years old, and Defendant was twenty-three. Child testified that she and Defendant had intercourse five times while she was twelve. Child further testified that while she was thirteen, she and Defendant had oral sex on several occasions and sexual intercourse four times.

{3} When Defendant was questioned by the social worker from Child Protective Services at the beginning of the investigation, Defendant denied having had intercourse with Child, but he did admit to having had oral sex with her. He was then arrested, taken into custody, and questioned by an investigator from the sheriff's department. The investigator conducted a taped interview of Defendant, and his statement was translated into English. According to the investigator, during the interview, Defendant again admitted to having had oral sex with Child. The investigator then asked how many times Defendant had had sexual intercourse with Child. The investigator began with two times. Defendant said that it was more. The investigator increased the number to five, and Defendant said, "No, more." The investigator increased the number until Defendant admitted to "no more than [twenty], more or less." At trial, Defendant admitted to two incidents of oral sex but denied having intercourse with Child; he claimed that his admission to the investigator had been the result of coercion. The investigator denied having coerced Defendant in any way. Additional facts will be developed as relevant to our discussion of the issues.

## II. DISCUSSION

### A. Due Process and Double Jeopardy

{4} Defendant argues that except for the difference in the time periods, the counts in the indictment and the counts in the jury instructions were carbon-copy counts of each other, thus presenting a successive prosecution issue and affecting his right to assert a double jeopardy bar to future attempts at prosecution of these same offenses. Essentially, Defendant is arguing that his rights to due process and to be free from double jeopardy were violated. However, Defendant concedes that he failed to make any objections below to the indictment or to the jury instructions. Thus, he has not preserved these issues for review. Due process claims will not be addressed when raised for the first time on appeal. *See State v. Nichols*, 2006–NMCA–017, ¶¶ 27–29, 139 N.M. 72, 128 P.3d 500; *State v. Baldonado*, 1998–NMCA–040, ¶¶ 21–22, 124 N.M. 745, 955 P.2d 214. Recognizing this failing, Defendant argues that there was fundamental error or, in the alternative, that his counsel's failure to object constituted ineffective assistance of counsel. We address Defendant's

ineffective assistance of counsel argument in the next section of this opinion.

■ {5} We read Defendant's due process argument to be limited to double jeopardy concerns. To the extent that Defendant raises a double jeopardy argument, lack of preservation does not affect our review. Defendant may raise a double jeopardy question on appeal, regardless of whether the issue was preserved. *State v. Cook,* 2006–NMCA–110, ¶ 8, 140 N.M. 356, 142 P.3d 944; *State v. Rodriguez,* 2004–NMCA–125, ¶ 4, 136 N.M. 494, 100 P.3d 200, *rev'd on other grounds,* 2006–NMSC–018, ¶ 1, 139 N.M. 450, 134 P.3d 737; *State v. Soto,* 2001–NMCA–098, ¶ 12, 131 N.M. 299, 35 P.3d 304. Accordingly, we need not apply a fundamental error analysis to Defendant's contention; rather, we will address Defendant's argument as a double jeopardy challenge.

■ {6} The Double Jeopardy Clause in the United States Constitution, applicable in New Mexico through the Fourteenth Amendment, provides that a defendant shall not "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This provision protects a defendant (1) from multiple prosecution, that is, from a second prosecution for the same offense after an acquittal or a conviction, and (2) from multiple punishments for the same offense arising out of a single prosecution. *State v. Martinez,* 120 N.M. 677, 678, 905 P.2d 715, 716 (1995). We generally apply a de novo standard of review to the constitutional question regarding the right to be free from double jeopardy. *See State v. Andazola,* 2003–NMCA–146, ¶ 14, 134 N.M. 710, 82 P.3d 77.

{7} Relying mainly on *Valentine v. Konteh,* 395 F.3d 626 (6th Cir.2005), Defendant argues that carbon-copy counts of CSPM were charged and instructed and that because they did not detail each crime alleged to have been committed, the lack of specificity as to each count allowed the jury to convict Defendant of the same crime numerous times, thus "making it impossible for [Defendant] to be protected from the danger of double jeopardy." In *Valentine,* the defendant was convicted of forty counts of sexual abuse and sentenced to forty consecutive life

sentences. *Id.* at 628. After being denied post-conviction relief by the state court, the defendant brought a habeas petition. *Id.* at 629–30. A divided Sixth Circuit reduced the conviction to one count of child rape and one count of felonious sexual penetration of a minor because the "prosecution did not distinguish the factual bases of these charges in the indictment, in the bill of particulars, or even at trial"; therefore, the defendant had "no way to determine what charges of a similar nature could be brought against him in the future if he were re-indicted." *Id.* at 628–29, 638–39.

{8} We considered a similar argument in *State v. Salazar,* 2006–NMCA–066, ¶¶ 29–31, 139 N.M. 603, 136 P.3d 1013, *cert. quashed,* 2007–NMCERT–004, 141 N.M. 569, 158 P.3d 459, wherein the defendant also relied on *Valentine* and argued that "sending multiple, carbon-copy counts of sexual abuse to the jury violates double jeopardy where there were no distinguishing factual bases for the multiple charges." *Salazar,* 2006–NMCA–066, ¶ 30. In *Salazar,* the victim testified that over a period of about three and a half years, the molestation occurred· nine times-eight times in a truck and one time at home. *Id.* ¶¶ 2, 4. While the victim was able to identify the locations where all of the penetrations took place, he was able to identify the times for only two of the events-the first time and the last time. *Id.* ¶ 4. The jury was instructed on nine identical counts of CSPM; no count was distinguished by time or place. *Id.* ¶ 6. The jury found the defendant guilty of counts 1 and 9 and not guilty of the remaining counts. *Id.* On appeal, the defendant contended that his right to be free from double jeopardy was violated by the trial court's sending the jury nine identical jury instructions on CSPM. *Id.* ¶ 29. This Court rejected the defendant's argument because the victim had been able to identify different locations, different time periods, and differences in the manner in which the abuse took place and had thereby provided "some distinguishing facts for the different counts." *Id.* ¶ 30. We held the following:

> [T]here was sufficient evidence presented to the jury from which it could have found two separate incidents of criminal sexual

penetration. The fact that each incident was instructed identically does not change this conclusion. Thus, there was no violation of double jeopardy in the manner in which the jury was instructed.

*Id.* ¶ 31.

{9} We recognize that the defendant in *Salazar* focused on the multiple prosecution aspect of double jeopardy and argued that his double jeopardy rights had been violated because "he could have been convicted on separate counts for unitary conduct." *Id.* Defendant here argues that the insufficient specificity in the indictment and trial record subjected him to being punished multiple times for what may have been the same offense. But he also argues that the lack of specificity will prevent him from pleading conviction as a bar to future prosecutions. Nevertheless, we apply the analysis in *Salazar* to the case at bar because both arguments are premised on the contention that lack of particularity in the jury instructions constituted reversible error.

{10} Preliminarily, we observe that in *Salazar*, there were nine identical instructions sent to the jury. *Id.* ¶ 29. In our case, Defendant was convicted of thirteen counts, but the instructions related to these counts were not all identical. There was one set of five identical instructions that related to the time period when Child was twelve. Then, there was another set of eight instructions related to the time period when Child was thirteen. These two sets of instructions differed by date. Of the set of eight instructions, there were four identical instructions with the elements for criminal sexual penetration, three identical instructions with the elements for fellatio, and one instruction with the elements for cunnilingus. Because the instructions were divided into two time periods, we review them in two parts.

▮ {11} We begin with the first set of five instructions. The indictment charged five counts of first-degree CSPM, each based on sexual intercourse and each alleged to have occurred in the four-month period from December 1, 2001, to March 29, 2002, the date of Child's thirteenth birthday. Based on the evidence presented at trial and the amendment to the indictment, these charges resulted in five identical jury instructions with the elements for first-degree CSPM covering the three-month period beginning December 31, 2001, and ending on March 28, 2002, the day before Child's thirteenth birthday.

{12} Child testified to the particulars of three of the counts: sexual intercourse took place first on December 31, 2001, in Defendant's bedroom at Child's uncle's home, located at that time in Vado, New Mexico; then again in Child's home in her mother's bedroom; and a third time at Child's home in Defendant's bedroom. Child did not describe the other two encounters but testified that she and Defendant had engaged in sexual intercourse five times in the three-month period from December 31, 2001, until she turned thirteen.

{13} As did the victim in *Salazar*, Child "distinguish[ed] facts for the different counts." *Id.* ¶ 30. She separated the events that took place from the end of December 2001 to when she turned thirteen from those events that took place when she was thirteen. She gave specific details about three of the occurrences and testified that she and Defendant had engaged in intercourse five times when she was twelve. Important to our evaluation of the evidence is Defendant's admission.

{14} Although he denied it at trial, Defendant previously admitted to having sexual intercourse with Child no more than twenty times, more or less, during the period from New Year's Eve 2001 to his arrest. In *Valentine*, there was no admission by the defendant, and "[o]utside of the victim's estimate, no evidence as to the number of incidents was presented." 395 F.3d at 633. The trial court in *Valentine* described the case as an "all or nothing" case. *Id.* at 634 (emphasis, internal quotation marks, and citation omitted). Unlike the jury in *Valentine*, the juries in *Salazar* and in our case could evaluate the counts separately and reject each on the evidence presented. Here, we conclude that there was sufficient evidence from which a jury could find five separate incidents of first-degree CSPM. Further, Defendant would be able to defend himself from double

jeopardy in any future prosecution for first-degree CSPM by pleading his conviction in the case sub judice and by requiring the subsequent prosecution to establish a different time frame for the commission of the crime. Accordingly, no double jeopardy violation is implicated here.

{15} The charges in the second category were alleged to have occurred during the eight-month period from March 29, 2002, to November 30, 2002. The indictment charged Defendant with eight counts of fourth-degree CSPM, six of which were based on sexual intercourse, one on cunnilingus, and one on fellatio. The State moved to modify the indictment to comply with the evidence. The motion was granted, and the jury was given eight separate instructions relating to the seven-month period from March 29, 2002, to October 22, 2002. The instructions listed elements for one count of cunnilingus, three counts of fellatio, and four counts of sexual intercourse during this period of time.

{16} During trial, Child testified to the specific details of each event that occurred when she was thirteen. She stated that sexual intercourse had taken place three times at her home-two times in Defendant's room and once in the living room. She also testified that she had intercourse with Defendant a fourth time, while Defendant was living with her uncle after he moved to Anthony. According to Child, one act of fellatio and one act of cunnilingus took place once in Defendant's car in the desert, when they were supposed to be buying corn. She also testified that two more acts of fellatio took place in the carport, and Child detailed the circumstance of one of the acts-she was throwing away the trash, and the dogs started barking; then the sex took place. Defendant admitted to one act of fellatio and one act of cunnilingus that took place in his car when Child was thirteen.

{17} In contrast to the testimony of the child in *Valentine* yet similar to that of the victim in *Salazar*, Child in this case described with particularity the four acts of criminal sexual penetration and the four separate incidents of oral sex that occurred during the seven-month period after her thirteenth birthday. The fact that some incidents were instructed identically does not change this conclusion. Further, based on the separate events described by Child to have occurred when she was thirteen, there was substantial evidence to convict Defendant of eight counts of criminal sexual penetration in the fourth degree. Thus, there was no violation of double jeopardy by the manner in which the jury was instructed on the eight convictions.

## B. Ineffective Assistance of Counsel

{18} Defendant did not raise his claim of ineffective assistance of counsel below. *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61, states the following:

> When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance.

Our first step is to determine whether Defendant has made a prima facie case.

{19} A claim of ineffective assistance of counsel presents a mixed question of law and fact, which we review de novo. *State v. Barnett*, 1998-NMCA-105, ¶ 13, 125 N.M. 739, 965 P.2d 323. To make a prima facie case, Defendant has the burden of proving (1) that counsel's performance fell below that of a reasonably competent attorney and (2) that Defendant was prejudiced by the deficient performance. *See State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we need not consider whether counsel's performance was deficient. *See State v. Brazeal*, 109 N.M. 752, 758, 790 P.2d 1033, 1039 (Ct.App.1990). In order for Defendant to establish his attorney's deficient performance, Defendant "must point to specific lapses by his trial counsel" and must show a reasonable probability that "but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 757–58, 790 P.2d at 1038–39 (internal quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 758, 790 P.2d at 1039 (internal quotation marks and citation omitted). "If a defendant does not make such a showing, . . . the presumption of effective assistance controls." *State v. Baca*, 1997–NMSC–059, ¶ 24, 124 N.M. 333, 950 P.2d 776.

{20} Defendant's points of ineffective assistance of counsel relate primarily to lack of preparation. Defendant complains that his counsel was generally unprepared for trial, filed no pre-trial motions, did not try to elicit more particulars from the prosecution, never really understood the differences in the charges, did not interview witnesses or review Child's safehouse interview, and did not understand the State's exhibits or the import of his own exhibit-the SANE exam report. Additionally, Defendant claims that his counsel was ineffective because he failed to put the State to its burden of proving each element of each crime beyond a reasonable doubt.

{21} At first blush, Defendant's allegations of his counsel's deficiencies give one pause; our review of the entire record, however, reveals that Defendant's claim of ineffective assistance is without merit. When evaluating an ineffective assistance of counsel claim, we review the entire proceeding and consider the totality of the evidence presented. *Roybal*, 2002–NMSC–027, ¶ 25. In our case, the jury had to decide who was telling the truth-Defendant or Child. Defendant does not explain how his counsel's alleged deficiencies in representation could have changed the result: the jury did not believe Defendant.

{22} We begin with Defendant's argument that he was prejudiced by his counsel's lack of preparation. Defendant's counsel did not file any pre-trial motions, and Defendant complains that his counsel should have filed at least a bill of particulars to try to elicit details about the charges against him. Except for the double jeopardy argument considered and decided adverse to Defendant above, he does not explain to us how

the filing of pre-trial motions would have affected his case. Similarly, Defendant does not point to the particulars that his counsel could have elicited and how this information would have aided in his defense. Nor does Defendant explain how his counsel's alleged misunderstanding of the charges prejudiced the defense. Without more, Defendant's claim must fail. *See Lytle v. Jordan*, 2001–NMSC–016, ¶ 25, 130 N.M. 198, 22 P.3d 666 (stating that absent a showing of incompetence and prejudice, a claim for ineffective assistance of counsel must fail).

{23} Defendant also points to his counsel's failure to interview witnesses and review the safehouse video. At trial, Child admitted that she had lied originally because she did not want to "get in trouble, myself and him, with my mom." Child testified that everything she said in court, what she told the investigator the second time, and what she stated in her safehouse video interview was the truth. Counsel for Defendant vigorously cross-examined Child. It appears that once Child admitted to the relationship with Defendant, her testimony about their activities was consistent. Defendant does not point to any additional information regarding Child's credibility that his counsel could have secured had he interviewed witnesses or prepared more thoroughly. Similarly, counsel's failure to review the safehouse video does not seem to have been prejudicial. Defendant provides nothing to show that the information provided on the video was inconsistent with Child's testimony at trial or that it could have been used to Defendant's benefit. Defendant provides no specifics as to how this case would have been strengthened by more preparation. Defendant has the burden of showing a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Brazeal*, 109 N.M. at 757–58, 790 P.2d at 1038–39 (internal quotation marks and citation omitted). Absent such a showing, "the presumption of effective assistance controls." *Baca*, 1997–NMSC–059, ¶ 24. Based on the above, we are not persuaded that there is a reasonable probability that the outcome of the trial would have been different had counsel for Defendant been more prepared.

{24} Defendant also complains that his counsel did not grasp the import of the State's exhibits or the import of his own exhibit-the SANE exam report. The State introduced three exhibits: the letter written to Defendant by Child, which instigated the investigation, and two photos relating to unused condoms discovered in Defendant's room on the day he was arrested. Although Defendant contends that his counsel did not understand the relevance of the letter and thought it was to be sent to Defendant in jail, he does not explain how any misunderstanding about the letter prejudiced him. On the contrary, the record demonstrates that the letter was read aloud during trial and that counsel for Defendant understood it well enough to cross-examine Child about its meaning. As to the condoms, Defendant contends that his counsel misunderstood their relevance and thought that the crimes occurred two or three years before the search of Defendant's room. At the beginning of the trial, counsel for Defendant made a general objection to introduction of the photos and made his comments about the time frame. Later, after the foundation was laid and the exhibits were proffered, counsel did not object, but he questioned Defendant about the condoms in order to show that Defendant did not come into possession of the condoms until September 2002, presumably after the last time he and Child had intercourse. It appears that any confusion that counsel may have experienced was cleared up during trial. Further, Defendant does not show how he was prejudiced by this confusion. When there is no showing of prejudice, the claim of ineffective assistance of counsel must fail. *See Lytle,* 2001–NMSC–016, ¶ 25; *Brazeal,* 109 N.M. at 757–58, 790 P.2d at 1038–39.

■ {25} Defendant introduced as an exhibit the SANE exam report. The nurse who conducted Child's SANE exam made a notation of "no trauma" as to Child's hymen. On cross-examination, the nurse testified that this did not mean that Child's hymen was intact. In his closing, counsel for Defendant tried to argue that the "no trauma" notation meant that Child's hymen was intact and that she was therefore a virgin.

{26} The State objected to this theory because it was based on a fact not in evidence, and the trial court sustained the objection. Defendant argues that this was a strategic mistake, that his counsel "shot himself in the foot" by calling the wrong witness, and that his counsel's failure of investigation proved fatal to this theory of defense. We agree that counsel for Defendant made a strategic decision, and we will not second-guess it. "Rarely will we engage on appeal in Monday-morning quarterbacking of trial counsel's tactics and strategy, and remand for a hearing on the issue of ineffective assistance of counsel, even when it appears the decisions may have been improvident." *State v. Jensen,* 2005–NMCA–113, ¶ 14, 138 N.M. 254, 118 P.3d 762; *see also State v. Gonzales,* 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992) (stating that the appellate courts will not second-guess the trial strategy and tactics of the defense counsel). While there may be some question as to counsel's tactics and strategy in representing his client, counsel's approach to the defense of his client, even though questionable, does not necessarily amount to ineffective assistance. In our case, Defendant does not explain how his attorney's conduct fell below that of a reasonably competent attorney; nor does Defendant show how he was prejudiced by this strategy. *See State v. Richardson,* 114 N.M. 725, 727, 845 P.2d 819, 821 (Ct.App.1992) (indicating that to establish a prima facie case of ineffective assistance of counsel, a defendant has the burden to show that counsel's performance fell below that of a reasonably competent attorney and that the defendant was prejudiced by the incompetence).

{27} Defendant further contends that his counsel failed to put the State to its burden of proving each element of each crime beyond a reasonable doubt. As explained in paragraphs 4–17 of this opinion, the State satisfied its burden of proving beyond a reasonable doubt by presenting substantial evidence to support each of Defendant's convictions. Therefore, we find no merit in Defendant's argument.

{28} We reject Defendant's ineffective assistance of counsel claim for failure to make a prima facie showing. *See State v. Swavola,*

114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct. App.1992) (limiting remand in ineffective assistance cases to those "in which the record on appeal establishes a prima facie case of ineffective assistance"). We affirm on this issue.

## III. CONCLUSION

{29} We affirm Defendant's convictions.

{30} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CYNTHIA A. FRY, Judges.