This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                    **NOS. 34,663 & 34,745 (consolidated)**

**STEVEN A.,**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Chief Judge.**

{1}     Steven A. (Child) appeals his adjudication of delinquency for criminal trespass, contrary to NMSA 1978, Section 30-14-1(C) (1995). On appeal, Child argues that (1) the children's court violated his right to be free from double jeopardy when it rejected the special master's recommendations, (2) the children's court violated his right to due process when it reviewed and reversed the special master's recommendations without a hearing, (3) the special master erred by admitting into evidence Child's statement that he knew he was not allowed on the premises, (4) there was insufficient evidence of criminal trespass, and (5) the special master erred by allowing inadmissible hearsay. We affirm.[1]

**BACKGROUND**

{2}     Child was charged with criminal trespass on July 22, 2014, contrary to Section 30-14-1(C). The State's juvenile delinquency petition alleged that Child "did knowingly enter or remain at 400 Riverwalk Drive (Rec Center), Carlsbad, Eddy County, New Mexico, land owned, operated or controlled by the State of New Mexico or a political subdivision thereof, and permission had been denied to [C]hild or withdrawn by the custodian of the lands, a misdemeanor[.]"

---

[1]We note that Case No. 34,663 and No. 34,745 are the same case, and to remedy the confusion that resulted from the filing of two notices of appeal, this Court issued an order consolidating the two cases and providing that further pleadings will be filed under case No. 34,663.

2

**{3}** The New Mexico Children's Court Rules provide that a special master may be appointed to assist in any children's court proceeding. Rule 10-163(A) NMRA. With respect to proceedings under the Delinquency Act (the Act), NMSA 1978, §§ 32A-2-1 to -33 (1993, as amended through 2016), the special master has—among other things—the power to make judicial determinations of probable cause and preside over detention hearings. Rule 10-163(C)(2). "All recommendations of the special master are contingent upon the approval of the children's court judge." Rule 10-163(C). The children's court judge must review the recommendations of the special master and may adopt such recommendations, modify them, reject them in whole or in part, receive further evidence, or may remand them to the special master with instructions. Rule 10-163(F)(1). Because the children's court judge is the final arbiter of children's court proceedings, New Mexico's children's court system is effectively a two-step process.

**{4}** On October 10, 2014, a special master conducted an adjudicatory hearing in Child's case. Two witnesses testified at the hearing: Sarah Carbajal, who is an attendant at the Rec Center, and Officer Josh Rodriguez. Carbajal described the Rec Center as a three-story building with various recreational facilities on its premises. Carbajal testified that she has the authority to ask children to follow Rec Center rules and give them verbal warnings if they do not follow the rules and, if they continue to disobey, to have them leave the premises for up to a month. In addition, if the

3

behavior continues, a Rec Center attendant can call a police officer to issue a criminal trespass warning (CTW). When a child has been issued a CTW, he is not allowed back on the property until he goes before the board at the Rec Center. Carbajal testified that staff members know which children have been issued a CTW by virtue of internal communications with other staff, and that they also have a sheet of paper indicating who has issued a CTW and to whom.

{5}	On July 22, 2014, Carbajal saw Child in front of the Rec Center skate park and, knowing he was not allowed to be on the property, approached Child and informed him of such. She told Child he had a CTW, therefore, he could not be on the property. Child's attorney objected to this testimony on hearsay grounds, and the special master overruled the objection. Carbajal further testified that, after she approached Child and told him he had to leave, "he acknowledged that I had spoken to him but he did not leave in a timely manner, so I went ahead and called an officer."

{6}	Officer Rodriguez was dispatched to the Rec Center and arrived about thirty minutes after Carbajal's call. Upon locating and identifying Child, who was still on the property, Officer Rodriguez advised Child that Child was not allowed to be there and that he would be receiving a criminal trespass citation. The State sought to elicit testimony from Officer Rodriguez about whether Child acknowledged he knew he was not allowed on the property. Child's attorney objected pursuant to Section 32A-2-14(D) (requiring proof that the statements were elicited only after a knowing,

4

intelligent, and voluntary waiver of the child's constitutional rights was obtained). Finding that Child's statements were voluntary, the special master overruled the objection, and Officer Rodriguez proceeded to testify that Child admitted he knew he was not allowed on the property. Officer Rodriguez further testified that he did not indicate to Child that Child was detained, his tone of voice was the same as it was during his testimony in court, the lights of his police car were not flashing, he had nothing in his hands, he was accompanied by another officer, and there was no reason for Child to feel apprehensive.

{7}     After the hearing, the special master entered findings and conclusions and found, in relevant part:

8.     No list containing [Child's] name as a person not permitted at the Rec Center was introduced into evidence.

. . . .

11.     There was no documentation or testimony of anyone, in a position of authority to do so at the Rec Center, having ever informed [Child] he was not permitted at the Rec Center on July 22, 2014, prior to July 22, 2014.

. . . .

16.     Officer Rodriguez testified . . . dispatch told him [Child] had a CTW and there was confirmation of a CTW having been issued to [Child] in a database [Officer] Rodriguez described. No evidence about the database was introduced into evidence. . . .

17.     No written CTW or documentation showing a CTW for [Child] was introduced into evidence.

5

18.	. . . It is unclear to the [c]ourt whether [Child's] location was still inside the Rec Center property [when Officer Rodriguez arrived], or whether he left the property. For this reason the [c]ourt must find there is reasonable doubt as to whether [Child] had remained on the property after visiting with [Carbajal], was leaving, or had left.

Based on its findings, the special master concluded that the State failed to prove beyond a reasonable doubt that Child committed the delinquent act of criminal trespass.

{8}	Pursuant to Rule 10-163(E), the State filed several exceptions to the special master's proposed findings and conclusions, arguing that there was no reasonable doubt concerning Child's presence on the property when Officer Rodriguez arrived and that Child knew consent to remain on the premises was withdrawn. If a party objects to the special master's recommendations, Rule 10-163(F)(1)(b) requires the court to hold a hearing; however, there is no evidence in the record that the children's court conducted such a hearing in this case. Although the State alleges that the required hearing occurred on January 16, 2015, we are unable to locate a transcript or CD of the hearing in our record. On February 12, 2015, and apparently without a hearing, the children's court "resolve[d] the objections" by reviewing the special master's recommendations and entering a final order. *See id.*

{9}	The children's court rejected the special master's recommendations and, based on the testimony of the witnesses, concluded that Child committed the delinquent act

6

of criminal trespass. The court specifically found that Child was aware that a CTW had been issued against him, and he knew he was not permitted on the property, yet remained on the premises for at least thirty minutes after Carbajal told him to leave. The court also found that whether or not there was documentation of a CTW was irrelevant because "[C]hild was told by no less than two persons in authority that his permission to be on the premises was withdrawn." After a dispositional hearing on February 16, 2015, Child was adjudicated a delinquent child and ordered committed to the Children, Youth and Families Department (CYFD), pursuant to Section 32A-2-19(B)(1), for an indeterminate period not to exceed two years. Child appealed.

**DISCUSSION**

**Double Jeopardy - Article II, Section 15 of the New Mexico Constitution**

{10} The first issue Child presents on appeal is whether the children's court's rejection of the special master's recommendation violated Child's right to be free from double jeopardy. Child contends for the first time on appeal that the New Mexico Constitution affords more expansive protection than the Federal Constitution in the double jeopardy and juvenile delinquency contexts and that this Court should adopt Justice Marshall's dissent in *Swisher v. Brady*, 438 U.S. 204, 219-32 (1978) (Marshall, J., dissenting). Child urges us to hold that jeopardy attached at the start of Child's hearing before the special master. Child also argues that the special master's recommendations constituted an acquittal, and in the alternative, even if they were not

7

an acquittal, Child's double jeopardy rights were violated by the ensuing children's court proceedings.

{11}    Child admits that he did not preserve this issue below. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). However, an appellant "may raise a double jeopardy question on appeal, regardless of whether the issue was preserved." *State v. Martinez*, 2007-NMCA-160, ¶ 5, 143 N.M. 96, 173 P.3d 18; *see* NMSA 1978, § 30-1-10 (1963) ("The defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment."); *State v. Doe*, 1977-NMCA-058, ¶ 21, 90 N.M. 536, 565 P.2d 1053 (noting that double jeopardy may be raised in any stage of children's court proceedings). Although double jeopardy claims may generally be raised for the first time on appeal, we note that established case law also suggests that double jeopardy claims under the State Constitution must be preserved in the district court. *See, e.g.*, *State v. Lynch*, 2003-NMSC-020, ¶¶ 12-14, 134 N.M. 139, 74 P.3d 73 (holding that, in order to address a state double jeopardy claim, appellate courts must first determine whether the issue was properly preserved below, and concluding that the defendant preserved his argument because he specifically used language from the state constitutional provision in his motion for reconsideration and provided a factual basis for the district court to rule on the double jeopardy issue); *State v. Vaughn*, 2005-NMCA-076, ¶ 7, 137 N.M.

8

674, 114 P.3d 354 ("[I]n order to preserve a [double jeopardy] claim under the [S]tate [C]onstitution, [the d]efendant would have had to raise this claim in the trial court.").

{12} While we recognize the apparent distinction in preservation rules for bringing federal and state double jeopardy claims, we need not address whether the issue was properly preserved because Child has failed to sufficiently develop his arguments on appeal. *See State v. Ortega*, 2014-NMSC-017, ¶ 59, 327 P.3d 1076 (declining to consider a defendant's argument where his attorney failed to cite any authority). In other words, we would not reach Child's double jeopardy arguments regardless of whether they were raised below because, on appeal, Child does not adequately develop a state constitutional argument. In examining our Constitution, the Court may diverge from federal precedents if (a) the federal analysis is flawed, (b) structural differences exist between state and federal government, or (c) there exist distinctive state characteristics. *State v. Gomez*, 1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1. Thus, if one of these circumstances is shown by Child to exist and to compel a more protective approach than that available under the Fifth Amendment to the Federal Constitution, we may grant the more protective relief under the State Constitution. Here, however, Child does not explain the basis for departing from federal precedent and, instead, merely contends that this Court should adopt the dissent in *Swisher*. Because Child invites us to deviate from federal precedent without any discussion or application of the *Gomez* factors, we decline to address whether the New Mexico

9

Constitution affords greater double jeopardy protections than its federal counterpart. In this case, Child, in the course of arguing for greater protections only under the State Constitution essentially concedes that his double jeopardy rights were not violated under the Federal Constitution.[2] Accordingly, we do not consider Child's double jeopardy arguments.

**Due Process**

{13}    Child argues that the children's court violated his right to due process when it reviewed and reversed the special master's report without a hearing pursuant to Rule 10-163(F)(1)(b). *See id.* ("If a party files timely, specific objections to the recommendations, the court shall conduct a hearing appropriate and sufficient to resolve the objections. The hearing shall consist of a review of the record unless the court determines that additional evidence will aid in the resolution of the objections."). *See generally Sandia v. Rivera*, 2002-NMCA-057, ¶ 12, 132 N.M. 201, 46 P.3d 108 ("Generally, due process requires notice and hearing before deprivation."). Notwithstanding our concerns that the record is devoid of evidence showing that the

---

[2]We acknowledge that Child did argue that the majority opinion in *Swisher* is a "misapplication of well-settled double jeopardy rules applicable once jeopardy has attached." 438 U.S. at 221 (Marshall, J., dissenting). Child furthered this argument, however, specifically in the context of whether jeopardy attached at the beginning of the special master's hearing. But we note that, were we to consider Child's substantive claims, it would be unnecessary to determine the exact moment jeopardy attached. *See id.* at 215 n.12 (explaining that "[i]t is not essential to decision . . . to fix the precise time when jeopardy attaches").

children's court held a hearing to resolve the State's objections, Child failed to preserve his due process argument. *See* Rule 12-321(A) ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Child does not point to anywhere in the record that demonstrates he objected to the children's court's failure to hold a hearing below, and we do not address due process claims when first raised on appeal. *See Martinez*, 2007-NMCA-160, ¶ 4 ("Due process claims will not be addressed when raised for the first time on appeal."). Child also does not assert fundamental error. *See State v. Cunningham*, 2000-NMSC-009, ¶ 10, 128 N.M. 711, 998 P.2d 176 (explaining that the "doctrine of fundamental error . . . is an exception to the general rule requiring preservation"). Accordingly, we do not reach Child's due process argument.

**Admission of Child's Statement**

{14}    The next question presented on appeal is whether the special master erred by allowing Officer Rodriguez to testify that Child acknowledged he was not allowed on Rec Center property. Child's knowledge that he was not permitted on the premises is relevant because knowledge is an element of the crime of criminal trespass. *See* § 30-14-1(C) ("Criminal trespass also consists of knowingly entering or remaining upon lands . . . knowing that consent to enter or remain is denied or withdrawn.").

{15}    Interpretation of Section 32A-2-14 of the Act, which delineates protections for juveniles alleged or suspected of committing delinquent acts, is a question of law

11

reviewed de novo on appeal. *State v. Antonio T.*, 2015-NMSC-019, ¶ 12, 352 P.3d 1172. On appeal, "we generally draw all inferences and indulge all presumptions in favor of the district court's ruling in conducting our de novo assessment of whether the court correctly applied the law." *State v. Taylor E.*, 2016-NMCA-100, ¶ 9, 385 P.3d 639.

{16} Section 32A-2-14(C) provides, "No person subject to the provisions of the . . . Act who is alleged or suspected of being a delinquent child shall be interrogated or questioned without first advising the child of the child's constitutional rights and securing a knowing, intelligent and voluntary waiver." Section 32A-2-14(D) further provides,

> Before any statement or confession may be introduced at a trial or hearing when a child is alleged to be a delinquent child, the state shall prove that the statement or confession offered in evidence was elicited only after a knowing, intelligent and voluntary waiver of the child's constitutional rights was obtained.

The narrow question here is whether Section 32A-2-14(C) was violated, and if so, whether the special master should have precluded Child's statement pursuant to Section 32A-2-14(D). *See Antonio T.*, 2015-NMSC-019, ¶ 19 ("When Section 32A-2-14(C) has been violated, the legislative remedy is to preclude the admission of any statement or confession elicited from the child in court proceedings.").

{17} Section 32A-2-14 provides protections to juveniles in two situations: "(1) after formal charges have been filed against a child; and (2) when a child is seized pursuant

12

to an investigatory detention and not free to leave." *State v. Javier M.*, 2001-NMSC-030, ¶ 38, 131 N.M. 1, 33 P.3d 1. Because Child argues that his interaction with Officer Rodriguez constituted an investigatory detention, we concern ourselves only with the latter of the two circumstances.

{18} "[W]hen a child is subject to an investigatory detention, law enforcement must advise the child of his or her right to remain silent and that if the right is waived anything that the child says can be used against them in any delinquency hearing." *Id.* ¶ 47. An investigatory detention occurs "when an officer approaches a child to ask the child questions because the officer suspects the child of delinquent behavior[.]" *Antonio T.*, 2015-NMSC-019, ¶ 17 (internal quotation marks and citation omitted). Importantly, however, "volunteered statements of any kind are . . . not subject to the protections of Section 32A-2-14 since such statements are generally not in response to any questioning or interrogation." *Javier M.*, 2001-NMSC-030, ¶ 40 (internal quotation marks and citation omitted).

{19} Child argues that he was subject to an investigatory detention when Officer Rodriguez approached him about the criminal trespass complaint and that the special master erred in admitting Child's statement that he knew he was not allowed at the Rec Center. Child additionally contends that he was denied his right to be advised of his constitutional rights under the Act. We disagree for the reasons that follow.

13

**{20}**     Although Child argues that his "statement was not made spontaneously, but rather was elicited in response to police questioning during an investigatory detention[,]" we are not persuaded because there is no evidence in the record indicating that Child was questioned or interrogated by law enforcement. Child did not present any evidence at the adjudicatory hearing; therefore, the only evidence upon which we may rely is Officer Rodriguez's testimony about his interaction with Child. *See generally Taylor E.*, 2016-NMCA-100, ¶ 9 (observing that we review factual issues for substantial evidence). Officer Rodriguez testified that there was no reason for Child to believe he was detained or feel apprehensive. Officer Rodriguez additionally testified that he simply advised Child he was not allowed to be on the property and that Child would be receiving a criminal trespass citation. Significantly, Officer Rodriguez did not testify that he asked Child any questions, but rather, that Child responded to being told he was not allowed on the premises by acknowledging that fact. Whether or not Child responded to the information law enforcement provided was entirely Child's decision. Because Child was not "interrogated or questioned," his voluntary and spontaneous admission was not subject to the protections of Section 32A-2-14. *See* § 32A-2-14(C) ("No person subject to the provisions of the . . . Act . . . shall be interrogated or questioned without first advising the child of the child's constitutional rights."); *Taylor E.*, 2016-NMCA-100, ¶ 57 (explaining that an investigatory detention occurs when law enforcement *questions* a

14

child suspected of committing a delinquent act). We conclude, therefore, as a matter of law, that the special master did not err in admitting Child's statement because Child was not subject to an investigatory detention. Accordingly, the State was not required to prove that Officer Rodriguez secured Child's knowing, intelligent, and voluntary waiver of his constitutional rights before introducing Child's statement.

**Sufficiency of the Evidence**

{21}     The next issue presented is whether there was sufficient evidence for the children's court to determine Child committed the delinquent act of criminal trespass. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Cunningham*, 2000-NMSC-009, ¶ 26. The question for us on appeal is whether the children's court's "decision is supported by substantial evidence, not whether the court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318.

{22}     To find Child committed the delinquent act of criminal trespass, contrary to Section 30-14-1(C), the State needed to prove that Child "did knowingly enter or

15

remain at 400 Riverwalk Drive (Rec Center), Carlsbad, Eddy County, New Mexico, land owned, operated or controlled by the State of New Mexico or a political subdivision thereof, and permission had been denied to [C]hild or withdrawn by the custodian of the lands[.]"

{23} Child argues that there was insufficient evidence to convict him for criminal trespass on the grounds that the State failed to prove that (1) he remained on Rec Center property, and (2) he had knowledge that permission to be on the premises had been withdrawn by the Rec Center's custodian. In arguing that there was insufficient evidence to prove that he remained on the property, Child claims that the testimony of Carbajal and Officer Rodriguez conflicted. And in arguing that there was insufficient evidence that the custodian had withdrawn permission for Child to be on the property, Child claims that neither Carbajal nor Officer Rodriguez were custodians of the Rec Center and there is no evidence that the custodian had actually withdrawn permission.

{24} First, with respect to whether the inconsistencies in the testimony provide insufficient evidence to support a finding that Child remained on the property, Child is asking us to re-weigh the conflicting testimony and resolve the matter in his favor. However, we do not evaluate the evidence or substitute our judgment for that of the fact-finder. *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. Because Officer Rodriguez testified that Child was still on Rec Center property when

16

he arrived at the scene, there was substantial evidence that Child remained on the premises, and we disregard all evidence and inferences to the contrary. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (explaining that, when reviewing for substantial evidence, appellate courts disregard all evidence and inferences that support a different result).

{25} Second, with regard to Child's argument that there was insufficient evidence that he had knowledge that permission to be on the premises had been withdrawn by the Rec Center's custodian, we conclude, under our deferential standard of review, that there was sufficient circumstantial evidence for the children's court to find that Child knew that he did not have consent to remain on Rec Center property. *Cf. State v. Merhege*, 2017-NMSC-016, ¶¶ 1, 8, 10-11, 394 P.3d 955 (discussing the evolution of New Mexico's criminal trespass standards, in particular, the knowledge requirement, and concluding that whether there was substantial evidence that the defendant knew he was not allowed to be on private land, in the absence of posting indicating the property was not open to the public, could be determined by circumstantial evidence).

{26} Here, Carbajal testified that she approached Child and told him that he was not permitted on the property. She further testified that he acknowledged that she had told him to leave and that he had a CTW. Thus, Carbajal's testimony provided circumstantial evidence that Child knew his permission to be on the property had been

withdrawn. Direct evidence that the custodian had withdrawn such permission is not required under our standard of review. *See Montoya*, 2015-NMSC-010, ¶ 52 (explaining that circumstantial evidence may support a finding of substantial evidence); *see also Merhege*, 2017-NMSC-016, ¶¶ 10-11 (holding that there was sufficient circumstantial evidence that the defendant knew he was not allowed on private property even though the defendant never met with the property's owner). In addition, Officer Rodriguez testified that Child admitted that he knew he was not supposed to be on the premises, providing additional circumstantial evidence that Child knew that the custodian of the Rec Center had withdrawn permission for Child to be on the property. Therefore, in reviewing the evidence in the light most favorable to the finding of delinquency, we conclude that there was sufficient circumstantial evidence for the children's court to find that Child committed criminal trespass.

**Hearsay**

{27}     Child next argues that Carbajal's testimony that Child had been issued a CTW was inadmissible hearsay. Appellate courts "review the trial court's admission of hearsay statements for an abuse of discretion." *State v. Balderama*, 2004-NMSC-008, ¶ 46,135 N.M. 329, 88 P.3d 845. However, whether the statement was hearsay is a question of law reviewed de novo. *See State v. Mendez*, 2010-NMSC-044, ¶ 15, 148 N.M. 761, 242 P.3d 328 (noting that legal questions are reviewed de novo).

18

**{28}** Hearsay is an out-of-court statement by a declarant offered into evidence to prove the truth of the matter asserted. Rule 11-801(C) NMRA. "An out-of-court statement is inadmissible unless it is specifically excluded as non-hearsay under Rule 11-801(D) or falls within a recognized exception in the rules of evidence, or is otherwise made admissible by rule or statute." *State v. McClaugherty*, 2003-NMSC-006, ¶ 17, 133 N.M. 459, 64 P.3d 486 (citation omitted), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. A " '[d]eclarant' means the person who made the statement." Rule 11-801(B).

**{29}** Carbajal testified that she was aware that Child was not allowed to be on Rec Center property because of internal communications with other staff and a sheet of paper that indicates who is not allowed on the property. She further testified that when she approached Child, she told Child he had a CTW and that he could not be on the property. Child objected to Carbajal's testimony that she told Child that he had a CTW on hearsay grounds, but the special master overruled the objection.

**{30}** Although the State does not rebut Child's hearsay argument, we nonetheless conclude that, as a matter of law, Carbajal's statement was not hearsay because she testified in court as to what *she* told Child, not as to the out-of-court-statement made by a declarant. *See Chavez v. City of Albuquerque*, 1997-NMCA-111, ¶ 7, 124 N.M. 239, 947 P.2d 1059 ("Hearsay, by its very nature, is the testimony of a declarant who is not present at trial under oath and not subject to cross-examination.").

19

{31} To the extent that Child argues that Carbajal's testimony that Child had a CTW was not based on personal knowledge, but instead relied on hearsay, we note that Child does not cite any authority to support his contention that personal knowledge cannot be gained by the assertions of others, and we will therefore not consider the issue. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists.").

**CONCLUSION**

{32} We affirm.

{33} **IT IS SO ORDERED.**


_____
**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**


_____
**J. MILES HANISEE, Judge**


_____
**HENRY M. BOHNHOFF, Judge**